UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KIMBERLY MUHLEISEN                          CIVIL ACTION

VERSUS                                            NO. 23-1064

SOCIAL SECURITY                            SECTION "R" (2)
ADMINISTRATION

## ORDER AND REASONS

Plaintiff Kimberly Muhleisen filed this complaint in March 2023, pursuant to 42 U.S.C. § 405(g), for judicial review of a December 17, 2019, decision terminating her entitlement to benefits under Title II of the Social Security Act by the Commissioner of the Social Security Administration ("SSA").[1]  Plaintiff filed a motion for summary judgment in June 2023[2] that was referred to Magistrate Judge Donna Currault under 28 U.S.C. § 636(b)(1) and Local Rule 73.2 for a Report and Recommendation ("R&R"). Magistrate Judge Currault recommended that the motion be denied, and that judgment be entered in favor of the defendant, dismissing the complaint with prejudice.[3]  Plaintiff filed objections to Magistrate Judge Currault's R&R.[4]  Having reviewed the motion for summary judgment, the record, the

---

[1]   R. Doc. 1.
[2]   R. Doc. 6.
[3]   R. Doc. 24.
[4]   R. Doc. 25.

applicable law, the Magistrate Judge's R&R, and plaintiff's objections, the Court adopts Magistrate Judge Currault's R&R as its opinion with the following additional analysis.

## I.  BACKGROUND

Plaintiff's disability arose out of injuries sustained in a motor vehicle accident on October 14, 2005.[5]  After the accident, plaintiff was hospitalized from October 15 through November 21, 2005, and was discharged with a diagnosis of traumatic brain injury (TBI), encephalopathy, asthenia, anemia, and MRSA bacteremia.[6]  Plaintiff filed her claim for disability with the SSA on June 7, 2015, on the basis of TBI, memory loss, and physical limitations resulting from injuries sustained in the accident, and was awarded disability benefits in December 2015 with an established onset date of April 1, 2010.[7] In the SSA's initial finding, it noted that plaintiff's condition could medically improve and would need periodic review.[8]

Plaintiff's entitlement to benefits was reviewed in 2019, and as part of that review, plaintiff underwent consultative examinations by Dr. Scott

---

[5]  R. Doc. 6-2 at 2.
[6]  *Id.*
[7]  R. Doc. 4 at 188; R. Doc. 11 at 25-27.
[8]  R. Doc. 11 at 2.

Sondes, M.D., and Dr. Mark Skellie, Psy.D.[9]   Dr. Sondes completed a comprehensive physical examination on September 18, 2019, and diagnosed plaintiff with a history of TBI with memory problems and anger issues and mild weakness in plaintiff's left thigh following open reduction and internal fixation.[10]   Dr. Skellie performed a mental status examination on November 19, 2019, and concluded that plaintiff exhibited various levels of impairment with respect to different mental capacities, including ability to understand, remember, and carry out instructions; ability to sustain effort and persist at a normal pace over the course of a routine forty-hour work week; and ability to relate to others.[11]   In its review, the SSA also considered the medical opinions of state agency medical consultants Dr. Cynthia Lindsey, Psy.D., and Dr. Jeffrey Faludi, M.D.[12]   Dr. Lindsey performed a mental residual functional capacity test on December 17, 2019, and found that plaintiff exhibited moderate limitations in mental functioning.[13]   Dr. Lindsey also summarized evidence regarding plaintiff's history of mental impairments.[14]   Dr. Lindsey's findings were affirmed upon reconsideration by Dr. Margaret

---

[9]     R. Doc. 4 at 47-49.
[10]    *Id.* at 715-19.
[11]    *Id.* at 722-26.
[12]    *Id.* at 49-50.
[13]    *Id.* at 221.
[14]    *Id.*

Hauck, Ph.D., in March 2020.[15]    Dr. Faludi performed a physical examination on September 30, 2019, and found that medical improvement had occurred because plaintiff had full range of motion of all extremities, normal gait and posture, 4/5 knee extension strength, and no spasms, tenderness, or radiculopathy.[16]

Based on the reports of these practitioners and plaintiff's medical records, the SSA found that plaintiff's condition was no longer "severe enough to be considered disabling."[17]    Plaintiff subsequently filed a written request for a hearing before an Administrative Law Judge ("ALJ"), and that hearing was held by telephone on June 15, 2021.[18]    After weighing the medical evidence and testimony from plaintiff, her mother, and an impartial vocational expert, ALJ Holly Hansen found on July 9, 2021, that plaintiff's disability ended on December 17, 2019, and affirmed the termination of plaintiff's benefits.[19]

Plaintiff then filed a request for review with the Appeals Council, which remanded the case to the ALJ for further review, finding that ALJ Hansen

---

[15]    *Id.*
[16]    R. Doc. 9 at 14.
[17]    R. Doc. 4 at 206.
[18]    *Id.* at 213; R. Doc. 11 at 2.
[19]    R. Doc. 4 at 213-24.

had applied an incorrect legal standard to the evaluation of evidence.[20]  On remand, ALJ Hansen held a second hearing on April 26, 2022.[21]  At the second hearing, ALJ Hansen heard additional testimony from plaintiff; her mother; Gina Roussel, LPC, who provided counseling services to plaintiff throughout 2021;[22] and a new impartial vocational expert.[23]  ALJ Hansen considered the same medical evidence at the second hearing with the sole addition of psychotherapy notes from Roussel dating from June 2021 through March 2022.[24]  On May 31, 2022, the ALJ issued another decision finding that plaintiff's disability ended on December 17, 2019, and reaffirming the termination of benefits.[25]  Plaintiff filed another request for review with the Appeals Council, and was granted multiple extensions of time in order to file new evidence with the Council as part of its review.[26]

The new evidence that plaintiff filed was a July 2022 report ("Bell Report") by Dr. Roberta Bell, who performed a neuropsychological evaluation that included IQ testing, neurological testing, and attentional

---

[20]   *Id.* at 232-33.
[21]   *Id.* at 39-52.
[22]   R. Doc. 6-2 at 6.
[23]   R. Doc. 4 at 116.
[24]   *Id.* at 49.
[25]   *Id.* at 52.
[26]   R. Doc. 11 at 2-3.

testing.[27]  The Bell Report includes a discussion of background information given to her by plaintiff and her family and qualitative notes concerning Dr. Bell's observations of plaintiff's behavior.   The Bell Report stated that plaintiff's "Full Scale IQ score was significantly below age expectations," provided detailed analysis of plaintiff's cognitive strengths and weaknesses, and opined that "any form of competitive employment is judged to be untenable . . . [d]ue to her memory deficits[,] . . . emotional volatility," and inability to focus.[28]   Dr. Bell based her findings on plaintiff's "current cognitive status," but she did not review or indicate in her report that she analyzed plaintiff's previous medical history or records.[29]   The Appeals Council denied review of plaintiff's case on January 24, 2023.[30]   In doing so, the Council declined to consider the Bell Report, finding that the new evidence did not relate to the time period under review, and did "not affect the decision about whether [plaintiff was] disabled beginning on or before May 31, 2022."[31]

Plaintiff then filed this action for review of the Commissioner's decision under 28 U.S.C. § 405(g).  Pursuant to Rule 5 of the Supplemental

---

[27]     R. Doc. 6-2 at 6.
[28]     *Id.* at 33-34.
[29]     R. Doc. 4 at 28-34.
[30]     *Id.* at 7-10; R. Doc 11 at 2-3.
[31]     R. Doc. 4 at 7-10; R. Doc 11 at 2-3.

Rules for Social Security Actions Under 42 U.S.C. § 405(g) ("Supplemental Rules"), an action for review of a final decision of the Commissioner is initiated with a complaint and "presented for decision by the parties' briefs." Fed. R. Civ. P. Supp. SS R. 5.  The parties' briefs may, but need not, take the form of motions for summary judgment.[32]  *See Higginbotham v. Barnhart*, 163 F. App'x 279, 281 (5th Cir. 2006) (distinguishing between ordinary summary judgment procedure and the procedure for reviewing a summary judgment motion in an action under 42 U.S.C. § 405(g)).  Regardless of the stylings of the parties' briefs, the Court must determine whether to render judgment in favor of plaintiff and reverse or remand the case to the SSA, or dismiss plaintiff's complaint and affirm the Commissioner's decision under 42 U.S.C. § 405(g).  Fed. R. Civ. P. Supp. SS R. 5 advisory committee notes ("This [briefing] procedure displaces summary judgment . . . as the means of review on the administrative record.").

Plaintiff filed a brief styled as a motion for summary judgment on June 24, 2023, objecting to two aspects of the proceedings before the SSA and seeking reversal, or in the alternative, reversal with remand under sentence four of § 405(g).[33]  Plaintiff's first assignment of error is that the Appeals

---

[32]   R. Doc. 5.
[33]   R. Doc. 6-2 at 17-18.

Council was obligated to consider the Bell Report as new and material evidence.[34]  Plaintiff's second assignment of error contends that the ALJ's finding of medical improvement is not supported by substantial evidence.[35] The motion was referred to Magistrate Judge Currault for findings and recommendations pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72(b), and Local Rule 73.2.  In the R&R, Magistrate Judge Currault found that, while the Bell Report was new and not cumulative, the Appeals Council did not err in refusing to consider it because, first, it did not relate to the time period under review, and second, plaintiff failed to show good cause for its late submission.[36]  The Magistrate Judge also found that the ALJ's determination of medical improvement was supported by substantial evidence based on the ALJ's discussion of plaintiff's medical records, her analysis of the testimony she heard, and the findings of the consultative medical examiners.[37]

Plaintiff timely objected to three aspects of the R&R: (1) the finding that that the Bell Report was not material because it did not relate to the time period on or before the ALJ's decision, (2) the finding that plaintiff has not

---

[34]   *Id.* at 10.
[35]   *Id.*
[36]   R. Doc. 11 at 18-23.
[37]   *Id.* at 23-30.

shown good cause for the delay in submitting the Bell Report, and (3) the finding that the ALJ's determination of medical improvement as to plaintiff's cognitive impairments was supported by substantial evidence.[38]  The case is now before the Court for a *de novo* review of those findings in the report and recommendation that plaintiff objected to.   Finding each of plaintiff's objections meritless, the Court overrules the objections.  The Court has also reviewed the unobjected-to portions of the R&R, including the Magistrate Judge's finding that the ALJ's determinations of medical improvement with respect to plaintiff's physical impairments and residual functional capacity were supported by substantial evidence, and found no clear error. Accordingly, the Court adopts the Magistrate Judge's R&R as its opinion.

The Court gives the reasons for its decision below.

## II.   STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(C), after a magistrate judge files a Report and Recommendation, an Article III judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  *See also* Fed. R. Civ. Pro. 72(b)(3) ("The district judge must determine de novo any part of the

---

[38]   R. Doc. 12-2 at 6-11.

magistrate judge's disposition that has been properly objected to."); *United States v. Raddatz*, 447 U.S. 667, 676 (1980) (holding that *de novo* determination "permit[s] whatever reliance a district judge, in the exercise of sound judicial discretion, [chooses] to place on a magistrate's proposed findings and recommendations"). The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3).

The findings and conclusions of the magistrate judge that are not subject to objection are reviewed for clear error. *See* Fed. R. Civ. P. 72(b) advisory committee notes ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."); *Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings."); *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989) (noting that "clearly erroneous" standard is appropriate "where there has been no objection to the magistrate's ruling").

The standard of review for a magistrate judge's report and recommendation is distinct from the standard of review that the magistrate

judge applies to the Commissioner of Social Security's decision regarding benefits.   Review under sentence four of 42 U.S.C. § 405(g) requires a determination of whether there is substantial evidence in the record to support the Commissioner's final decision, and whether the Commissioner applied the appropriate legal standards in reaching that decision.   *See Salmond v. Berryhill*, 892 F.3d 812, 816-17 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).   Substantial evidence is more than a scintilla, less than a preponderance, and such that a reasonable mind might accept a conclusion based thereon.   *See Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990)); *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).   A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision.   *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)).   On review under 42 U.S.C. § 405(g), a federal court may not "reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for that of the Commissioner's, even if the evidence weighs against the Commissioner's decision."   *Salmond*, 892 F.3d at 817 (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)

(internal quotation marks omitted)).   Conflicts in evidence are for the Commissioner to resolve, not the courts.  *See Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983).

## III.   DISCUSSION

### A.   Refusal to Consider the Bell Report

Plaintiff objects to the Magistrate Judge's finding that the Appeals Council correctly refused to consider the Bell Report on two grounds.  First, plaintiff contends that the Bell Report is material because it relates to the time period under review,[39] and second, plaintiff argues that she has demonstrated good cause for submitting it after the ALJ's decision.[40]

#### 1.   *Materiality*

In her objection to the R&R, plaintiff contends that the Bell Report relates to the time period under review because Dr. Bell's findings stem from the brain injury plaintiff sustained in the motor vehicle accident in 2005.[41]

The Appeals Council declined to consider the Bell Report because it found that the report did not relate to the period at issue, and did "not affect

---

[39]    *Id.* at 7-9.
[40]    *Id.* at 9-11.
[41]    *Id.* at 7-8.

the decision about whether [plaintiff was] disabled beginning on or before May 31, 2022."[42]  Magistrate Judge Currault determined that the Appeals Council did not commit reversible error and that the evidence did not relate to the time period at issue.  The Magistrate Judge was correct that the evidence must relate to the time period on or before the ALJ's decision.  Both the Fifth Circuit and the relevant Social Security regulation require that new evidence relate "to the period on or before the ALJ's decision" to be considered by the Appeals Council in evaluating disability claims.  *Hardman v. Colvin*, 820 F.3d 142, 150 (5th Cir. 2016) (quoting *Sun v. Colvin*, 793 F.3d 502, 511 (5th Cir. 2015)); 20 C.F.R. § 404.970(a)(5); *see also Hammond v. Barnhart*, 132 F. App'x 6, 7 (5th Cir. 2005) (per curiam) (noting that "medical evidence must shed light on the severity of claimant's medical condition" during the period under review).

Plaintiff's objection to the R&R that the Bell Report relates to the time period at issue because the cognitive impairments Dr. Bell analyzed originated in plaintiff's motor vehicle accident fails because Dr. Bell did not purport to analyze the progression or development of plaintiff's condition.

---

[42]  R. Doc. 4 at 8.

In fact, she expressly disclaimed that proposition.[43]  *Cf. Lee v. Colvin*, No. 14-418, 2016 WL 310282, at *7 (E.D. Tex. Jan. 26, 2016) ("While Dr. Pitt's psychological examination . . . w[as] . . . made after the . . . hearing decision, Dr. Pitt reported that the mental limitations she found existed . . . within the time period for which disability benefits were denied. . . . Dr. Pitt [indicated] she could reasonably infer that Plaintiff has had the same limitations since [onset of disability]."). Further, as Magistrate Judge Currault determined, Dr. Bell "does not evaluate any medical records preexisting the July 2022 evaluation."[44]

Plaintiff nevertheless contends that this case is controlled by *Ripley v. Chater*, in which the Fifth Circuit found that a district court erred in failing to remand a case to the SSA based on new medical evidence. 67 F.3d 552 (5th Cir. 1995). In that case, the claimant filed an application for Title II Social Security disability benefits based on a back injury. *Id.* at 554. Before filing the application, the claimant had received a partial hemilaminectomy and a discectomy on a herniated disc caused by the injury. *Id.* Months after the SSA reached a final adverse decision on the application for benefits, the

---

[43]    *Id.* at 31 ("Overall, the following results are judged to provide a reasonably accurate reflection of [plaintiff's] current cognitive status.").

[44]    R. Doc. 11 at 21.

claimant underwent additional surgery that revealed significant scar tissue from the discectomy and scarring on the nerve root. *Id.* at 555. The Fifth Circuit held that the scar tissue related to the time period of claimant's application because it "resulted from the initial surgery . . . and was not a condition which developed after the ALJ's decision." *Id.* at 556.

The mental impairments discussed in the Bell Report are distinguishable from the scar tissue identified in *Ripley* because they do not stem from an injury that occurred during the relevant time period. In *Ripley*, the claimant sought benefits in 1991 for back pain beginning in 1988. *Id.* at 554. The initial discectomy that created the scar tissue discovered in claimant's 1994 additional surgery occurred during the relevant time period of the ALJ's review, from 1988 to 1992. *Id.* at 554-55. Thus, the scar tissue originated and developed in the review period and was itself the cause of claimant's symptoms.

Here, plaintiff's motor vehicle accident occurred in 2005, she received an established onset date for disability purposes of April 1, 2010, and the time period to which new evidence must relate is from December 17, 2019, through May 31, 2022. While Dr. Bell's report refers to the motor vehicle accident, it does not shed light on plaintiff's condition from December 2019 to May 2022, because, as Magistrate Judge Currault noted, it assesses

plaintiff's cognitive status only as of plaintiff's examination in July 2022, and does not refer to any medical records preexisting that date.[45]   Such a retrospective opinion cannot prove the existence of a disability during the time period under review.  *See McLendon v. Barnhart*, 184 F. App'x 430, 432 (5th Cir. 2006) (per curiam) ("While a retrospective opinion can prove the existence of a disability, the retrospective opinion must refer clearly to the relevant period of disability and not simply express an opinion to the claimant's current status."); *Reine v. Social Sec. Admin.*, No. 20-440, 2021 WL 8314385, at *7 (E.D. La. Oct. 14, 2021) (holding that ALJ properly disregarded medical report dated after cutoff when "nothing in Dr. Kumar's reports or notes indicate that the opinions he rendered on [p]laintiff's condition at the time of and after his examination were related to or reflective of Plaintiff's condition prior to the" cutoff).  Accordingly, the Court finds that the Bell Report is not material because it does not relate to the relevant time period, and plaintiff's objection to the magistrate judge's report as to the materiality of the Bell Report is meritless.

### 2.    *Good Cause*

---

[45]    R. Doc. 4 at 28-34.

Plaintiff, for the first time in her objections to Magistrate Judge Currault's R&R, contends that good cause exists to consider new evidence because an evaluation such as the one conducted by Dr. Bell "was cost-prohibitive" during the pandemic.[46]   Plaintiff further contends that good cause exists because the burden was on the Commissioner to prove medical improvement, and the Commissioner should have ordered a neuropsychological exam but did not.[47]

The Appeals Council is required to consider new evidence only if the claimant can "show good cause for not informing [the SSA] about or submitting the evidence" to the ALJ.  20 C.F.R. § 404.970(b).  To satisfy the good-cause standard, a petitioner must give "a proper explanation of why it was not submitted earlier."  *Geyen v. Sec'y of Health & Hum. Servs.*, 850 F.2d 263, 264 (5th Cir. 1988).  This explanation must include "a legitimate reason."  *Ripley*, 67 F.3d at 556.  "The mere fact that a medical report is of recent origin" does not establish good cause.  *Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989).  The Social Security regulations list three ways to show good cause: (1) an action of the SSA misled the claimant, (2) the claimant had a physical, mental, educational, or linguistic limitation that

---

[46]   R. Doc. 12-2 at 9-10.
[47]   *Id.* at 11.

prevented him or her from informing the SSA about or submitting the evidence earlier, or (3) another unusual, unexpected, unavoidable circumstance beyond the claimant's control prevented him or her from informing the SSA about or submitting the evidence earlier.  20 C.F.R. § 404.970(b).

While the pandemic was an "unusual, unexpected, unavoidable circumstance," 20 C.F.R. § 404.970(b), plaintiff does not explain how it relates to the cost of obtaining a neuropsychological examination.  *See Barbara v. Kijakazi*, No. 21-17303, 2023 WL 6633855, at *10 (D.N.J. Oct. 11, 2023) ("Plaintiff's conclusory argument in this regard does not explain . . . how the 'disarray caused by the COVID-19 pandemic' prevented her from" presenting relevant medical records).  This conclusory argument concerning the pandemic fails.

Further, the Social Security regulations list five examples of unusual, unexpected, or unavoidable circumstances, including serious illness or death in the claimant's immediate family, destruction of records, and receipt of records after or immediately before a hearing despite claimant's diligent pursuit of them prior to the hearing.  *See* 20 C.F.R. § 404.970(b)(3).  Plaintiff's explanation is unlike any of these examples because the COVID-19 pandemic had been ongoing for two years before the ALJ's final decision, and

plaintiff does not demonstrate that her or her family's finances changed, or that the cost of a neuropsychological exam changed, between the beginning of the pandemic and the time that plaintiff obtained the Bell Report. No scenario listed in § 404.970(b) apply here.

Moreover, as the Magistrate Judge noted, plaintiff's counsel affirmed in the hearing before the ALJ that the record was complete. There is also no evidence that plaintiff expressed concerns about her ability to fairly develop the record due to her limited financial resources during the proceedings in front of the SSA. Thus, plaintiff's objection to the Magistrate Judge's finding that plaintiff failed to demonstrate good cause to consider new evidence on the basis of financial hardship fails.

As to plaintiff's argument that good cause exists because the ALJ should have ordered a neuropsychological exam, an ALJ "has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley*, 67 F.3d at 557. The ALJ must order a consultative exam "only if the record establishes that such an examination is necessary to enable the ALJ to make the disability decision." *Webster v. Kijakazi*, 19 F.4th 715, 720 (5th Cir. 2021) (quoting *Hardman v. Colvin*, 820 F.3d 142, 148 (5th Cir. 2016)). Here, ALJ Hansen had a wealth of medical records relating to both plaintiff's physical and mental conditions, including an exam by a

psychological evaluator, Dr. Skellie, and plaintiff's counselor, Gina Roussel. The record was sufficiently developed for the ALJ to make an informed decision with respect to plaintiff's claim for benefits, and plaintiff has not shown that the argued for neuropsychological exam was necessary to enable the ALJ to make a decision.

### B.    Substantial Evidence of Medical Improvement

Finally, plaintiff objects to the Magistrate Judge's finding that the ALJ's determination of medical improvement was supported by substantial evidence based on the contention that the evidence shows that plaintiff is experiencing similar, or somewhat worse, mental residuals from the injuries she sustained in the motor vehicle accident.[48]  Plaintiff points to Dr. Skellie's conclusions and notes from a "biopsychosocial assessment" performed by Gina Roussel to show that she has developed "anger and memory issues," when she had previously been diagnosed only with "memory loss and agitation."[49]  Additionally, plaintiff contends that the Bell Report requires a finding of cognitive impairment.[50]

---

[48]    *Id.* at 12.
[49]    *Id.*
[50]    *Id.* at 12-13.

Medical improvement is "any decrease in the medical severity of" a claimant's "impairment(s) which was present at the time of the most recent . . . decision that you were disabled." 20 C.F.R. § 1594(b)(1). To find medical improvement, there must be an "improvement in the symptoms, signs, and/or laboratory findings associated with [a claimant's] impairment(s)." *Id.*

Plaintiff points to findings from Dr. Skellie's evaluation and one of Roussel's assessments of plaintiff to show that plaintiff's psychological impairments have not improved.[51] But as Magistrate Judge Currault noted:

> [T]he ALJ found that the most recent notes from psychological examination indicate only mild-to-moderate impairments in mental functioning and counseling records reflect consistently normal mental status examinations from June 2021—March 2022. . . . A review of the record reveals that the ALJ's assessment and conclusion were based on a combination of consultative psychological and physical examination findings, hearing testimony, and counseling records.[52]

Plaintiff relies heavily on the Bell Report to illustrate increased severity of cognitive impairment,[53] but because the Court has found that the Bell Report does not relate to the relevant time period, it is properly excluded from the medical improvement analysis. Accordingly, plaintiff's objections

---

[51]   *Id.* at 12.
[52]   R. Doc. 11 at 24-25.
[53]   R. Doc. 12-2 at 12-13.

to the Magistrate Judge's findings with respect to the severity of her cognitive impairments is meritless.

Having found each of plaintiff's objections to the Magistrate Judge's R&R meritless, the Court overrules them. The Court has also reviewed those portions of the R&R to which no specific objection was lodged, including the Magistrate Judge's findings and conclusions regarding plaintiff's physical impairments and the ALJ's analysis of plaintiff's residual functional capacity, and found no clear error. Thus, the Court adopts the R&R as its opinion.

## IV.   CONCLUSION

For the foregoing reasons, the Court OVERRULES plaintiff's objections, APPROVES and ADOPTS the Magistrate Judge's Report and Recommendation, DENIES plaintiff's motion for summary judgment, AFFIRMS the Commissioner's decision, and DISMISSES plaintiff's complaint WITH PREJUDICE.


New Orleans, Louisiana, this __12th__ day of January, 2024.


_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

23